**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| MAX REED II, | 3:11-cv-00066-HDM (WGC) |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| vs. | **OF U.S. MAGISTRATE JUDGE** |
| DEPUTY TRACY, et. al. | |
| Defendants. | |

This Report and Recommendation is made to the Honorable Howard D. McKibben, Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.

Before the court is Defendant Haley's Motion to Dismiss(Doc. # 7)[1], which Defendants Jenkins, Tracy, and Hamilton have joined (Doc. # 18, Doc. # 22). Plaintiff initially stated that he never received Defendants' motion (Doc. # 19), and was re-served with the motion, and afforded up to and including January 6, 2012 within which to file his opposition (*see* Doc. # 30). Plaintiff failed to file an opposition. After a thorough review, the court recommends that Defendants' motion be denied.

## I. BACKGROUND

Plaintiff Max Reed II, is an inmate in custody of the Nevada Department of Corrections (NDOC); however, the events giving rise to his Complaint took place while he was a pretrial detainee at Washoe County Detention Facility (WCDF). (Pl.'s Compl. (Doc. # 4).) Plaintiff, a *pro se* litigant, brings this action pursuant to 42 U.S.C. § 1983. (*Id.* at 1.) Defendants are

---

[1] Refers to the court's docket number.

Washoe County Sheriff Michael Haley, and Deputies Tracy, Jenkins, and Hamilton[2]. (*Id.*)

In Count I, Plaintiff alleges that Defendant Haley has continuously thwarted Plaintiff's attempts to gain access to law books, procedural rules, and Nevada statutes. (Doc. # 4 at 4.) He claims that he received a grievance response that stated WCDF does not have to provide "law library access" to Plaintiff. (*Id.* at 3.) He alleges that he is trying to prepare his *pro se* defense against criminal charges. (*Id.* at 3-4.)

In Count II, Plaintiff alleges that Defendants Hamilton and Tracy retaliated against him for grieving his lack of access to legal materials by searching his cell. (Doc. # 4 at 5.) He alleges that he could hear Defendant Tracy throwing his legal paperwork around. (*Id.*) He claims that during the search, Defendant Tracy dumped out his legal paperwork, ripped up legal papers, and floated them in the toilet. (*Id.*) At the conclusion of the search, Plaintiff claims that Defendant Tracy told him to get a lawyer because he had a "stupid amount of legal work." (*Id.*) He asserts that as a result of the search, Defendant Jenkins found him guilty of having a weapon in his cell; Plaintiff asserts he had no weapon. (*Id.* at 5-6.)

Defendants move to dismiss arguing: (1) Plaintiff has had access to the courts sufficient to withstand constitutional scrutiny; (2) Plaintiff cannot succeed on his retaliation claim because his court records establish that the exercise of his rights has not been chilled and he cannot establish the elements of his retaliation claim; and (3) Defendants are entitled to qualified immunity. (Doc. # 7.)

## II. LEGAL STANDARD

"A dismissal under Federal Rule of Civil Procedure 12(b)(6) is essentially a ruling on a question of law." *North Star Int'l v. Ariz. Corp. Comm'n.,* 720 F.2d 578, 580 (9th Cir. 1983) (citation omitted). Under Rule 8(a), "a claim for relief must contain...a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The Supreme Court has found that at minimum, a plaintiff should state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570

---

[2] Previously named as Doe Deputy # 1688. (*See* Doc. # 4.)

(2007). The complaint need not contain detailed factual allegations, but it must contain more than "a formulaic recitation of the elements of a cause of action." *Id.* at 555 (citation omitted). The Rule 8(a) notice pleading standard requires the plaintiff to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* (internal quotations and citation omitted).

In considering a motion to dismiss for failure to state a claim upon which relief may be granted, all material allegations in the complaint are accepted as true and are to be construed in a light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.2d 336, 337-38 (9th Cir. 1996) (citation omitted). However, this tenet is "inapplicable to legal conclusions." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 1950.

As a general rule, the court may not consider any material beyond the pleadings in ruling on a motion to dismiss for failure to state a claim without converting it into a motion for summary judgment. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). A court may, however, take judicial notice of matters of public record pursuant to Federal Rule of Evidence 201, provided that the judicially noticeable facts are not subject to reasonable dispute. *Id.* at 689; Fed.R.Evid. 201(b).

Here, Defendants rely on material beyond the four-corners of the Complaint (*see* Doc. # 7 Ex. 1-9); however, all of the documents relied on are part of the record in the Second Judicial District Court, either in Plaintiff's underlying criminal case, or the criminal case stemming from the weapons contraband charge, Case Nos. CR10-1575 and CR11-0026, respectively. (*Id.*) "A court may take judicial notice of 'matters of public record' without converting a motion to dismiss into a motion for summary judgment." *Lee,* 250 F.3d at 688 (citation omitted). The court takes judicial notice of the records submitted in support of Defendants' motion.

### III.  DISCUSSION

**A.  Count I- First Amendment Access to Courts**

Convicted inmates and pretrial detainees have a constitutional right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 346 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1997), *limited in part on other grounds by Lewis*, 518 U.S. at 354; *Ching v. Lewis*, 895 F.2d 608, 609 (9th Cir. 1990). This right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds*, 430 U.S. at 828; *see also Madrid v. Gomez*, 190 F.3d 990, 995 (9th Cir. 1999). The right, however, "guarantees no particular methodology but rather the conferral of a capability- the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts...[It is this capability] rather than the capability of turning pages in a law library, that is the touchstone" of the right of access to the courts. *Lewis*, 518 U.S. at 356-57. Prison officials may select the best method to ensure that prisoners will have the capability to file suit. *See id.* at 356. Prisons "might replace libraries with some minimal access to legal advice and a system of court-provided forms...that asked the inmates to provide only the facts and not to attempt any legal analysis." *Id.* at 352.

To establish a violation of the right of access to the courts, a prisoner must establish that he or she suffered an actual injury, a jurisdictional requirement that flows from the standing doctrine and may not be waived. *Lewis,* 518 U.S. at 348 (citation omitted); *see also Alvarez v. Hill*, 518 F.3d 1152, 1155 n. 1 (9th Cir. 2008)(citation omitted) (explaining, "[f]ailure to show that a 'non-frivolous legal claim ha[s] been frustrated' is fatal" to a claim of denial of access to the courts). "Actual injury" is defined as "actual prejudice with respect to contemplated or existing litigation, such as inability to meet a filing deadline or present a claim." *Id.* at 348 (citation and internal quotations omitted). The right of access to the courts is limited to non-frivolous direct criminal appears, *habeas corpus* proceedings, and § 1983 actions. *See Lewis*, 518 U.S. at 353 n. 3, 354-55; *Simmons v. Sacramento County Superior*

*Court*, 318 F.3d 1156, 1159-60 (9th Cir. 2003) ("a prisoner has no constitutional right of access to the courts to litigate an unrelated civil claim"); *Madrid*, 190 F.3d at 995.

Plaintiff was charged with murder with the use of a deadly weapon in the Second Judicial District in the State of Nevada. (Doc. # 7-2 (Ex. 1, 2) at 2-7.) On December 13, 2010, the District Judge in the Second Judicial District issued an order appointing stand-by counsel after conducting what it termed an "extensive canvas" and *Faretta* hearing regarding Plaintiff's request to represent himself. (Doc. # 7-2 (Ex. 4) at 19.) The court appointed Scott Edwards, Esq., for the limited purpose as serving as stand-by counsel to assist Plaintiff in trial, and to assist in the issuance of trial subpoenas and pre-trial preparations. (*Id.* at 19, 37.) At the *Faretta* hearing, the court specifically told Plaintiff he would be appointed stand-by counsel, as well as an investigator, for this purpose, and that he would not have access to a law library. (Doc. # 7-2 (Ex. 5) at 21-22, 25, 32.) The court also told Plaintiff that if there was no law library at the WCDF, Plaintiff would strictly have access to what was available at the jail. (*Id.* at 35.)

Plaintiff was also given one (1) hour per day outside his cell at the Washoe County Jail to prepare his legal defense in his criminal case. (Doc. # 7-2 (Ex. 7) at 47.) This order was stayed, and then reinstated following a competency determination. (*Id.* at 46-47.)

On December 15, 2010, Plaintiff filed an inmate request form requesting approval of his evidence. (Doc. # 7-2 (Ex. 8) at 54-56.) The state court denied this request. (Doc. #7-2 (Ex. 8) at 50.) Plaintiff also filed seven (7) inmate request forms on December 17, 2010, requesting the following information: (1) a copy of all of his court dates and court minutes to file paperwork, as well as his court file to begin his legal work; (2) a copy of all motions and orders from his case; (3) a new point of contact regarding the law and filing motions; (4) a copy of his incident report as well as certain Nevada Revised Statute provisions; (5) that various subpoenas be filed; (6) any interviews his appointed investigator had conducted; (7) his visiting records from lawyers and investigators. (Doc. # 7-2 (Ex. 8) at 57-65.)

The state court responded to these requests as follows: (1) Counsel Edwards was directed to provide the media discovery to the WCDF; (2) Plaintiff requested and the court

5

1 adopted four pre-trial motions previously filed by counsel Edwards, thus such request was
2 granted; (3) the court denied the request; (4) the court directed Plaintiff to request this
3 information through a subpoena; (5) the court granted the request to the extent the records
4 relate to Plaintiff's Sonoma County incarceration and were available; (6) the court requested
5 that investigator Savage obtain information related to this request; and (7) the court requested
6 that investigator Savage obtain information related to this request. (Doc. # 7-2 (Ex. 8) at 51-
7 52)

8 Plaintiff filed an additional ten (10) inmate requests of December 20, 2010. (Doc. # 7-2
9 (Ex. 8) at 66-77.) Plaintiff requested the following information: (1) an evidence hearing
10 regarding judicial bias; (2) stand-by defense counsel's duties; (3) a form habeas corpus writ
11 petition; (4) a new set of discovery because a correctional officer destroyed his legal paperwork;
12 (5) assistance filing a motion to dismiss for lack of evidence and for withholding evidence
13 indicating that he has no paper or access to cases to support such a motion; (6) cases regarding
14 police and attorney misconduct; (7) cases regarding police leading witnesses, sharing
15 information with other witnesses and withholding reports and evidence; (8) specific case
16 authority and statutory provisions; (9) specific case authority; and (10) additional case
17 authority. (*Id.*)

18 The state court responded as follows: (1) Plaintiff was directed to file the motion he
19 deemed appropriate and forward it to the chief judge; (2) denied the request because Plaintiff
20 was not entitled to access to a law library; (3) directed Plaintiff to file the document or motion
21 he deemed appropriate; (4) directed Plaintiff to file the motion he deemed appropriate related
22 to the missing material; (5) directed Plaintiff to file the document he deemed appropriate; (6)
23 directed Plaintiff to file the appropriate document; (7) denied the request because the court
24 cannot serve as his attorney, and reminded Plaintiff he was entitled to court-appointed counsel;
25 (8) denied the request because the court would not provide the authority requested; (9) denied
26 the request in that the court would not provide the case authority or legal research; and
27 (10) denied the request in that the court would not provided the case authority. (Doc. # 7-2 (Ex.
28

6

8) at 51-52.)

On March 21, 2011, Plaintiff filed a motion requesting new stand-by counsel and investigator. (Doc. # 7-2 (Ex. 6) at 40-44.)

On March 25, 2011, Plaintiff filed a motion requesting that he be moved to a state facility where he would have access to legal materials in his cell and to the law library. (Doc. # 7-2 (Ex. 8) at 78-81.) He states that at the WCDF, he was unable to prepare a meaningful defense. (*Id.* at 79.) On March 31, 2011, Plaintiff filed a motion requesting an order to remove the "keep separate" designation between him and his co-defendant so that they could prepare for trial. (Doc. # 7-2 (Ex. 9) at 83-86).

While Defendants may ultimately be relieved of liability as to Count I, the court cannot determine at this juncture, from the Complaint and matters of which it took judicial notice, whether or not Plaintiff's First Amendment right of access to courts was violated. While the court notes that Plaintiff declined to be represented by appointed counsel, and was provided with stand-by counsel and an investigator, Plaintiff's inmate requests raise a question regarding the lack of access to any law library at WCDF and the adequacy of form legal documents provided to him. (Doc. # 7-2 (Ex.8).) The court must take Plaintiff's factual allegations as true at this stage, and Plaintiff alleges that he was denied any meaningful access to legal materials. (Doc. # 4 at 3.) Accordingly, Defendants' motion to dismiss Count I should be denied.

**B. Count II- First Amendment Retaliation**

A plaintiff may state a claim for violation of his or her First Amendment rights due to retaliation under 42 U.S.C. § 1983. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). Such a claim consists of five elements: "(1) An assertion that a state actor took some adverse action against an inmate; (2) because of; (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (citations omitted).

The inmate must (1) submit evidence, either direct or circumstantial, to establish a link

7

1 between the exercise of constitutional rights and the allegedly retaliatory action, and (2)
2 demonstrate that his or her First Amendment rights were actually chilled by the alleged
3 retaliatory action. *Pratt*, 65 F.3d at 806-07. Timing of the events surrounding the alleged
4 retaliation may constitute circumstantial evidence of retaliatory intent. *See Sorrano's Gasco,*
5 *Inc. v. Morgan*, 874 F.2d 1310, 1316 (9th Cir. 1989). The Ninth Circuit has recognized that
6 prisoners have a fundamental First Amendment right to file prison grievances and pursue civil
7 rights litigation, and "because purely retaliatory actions taken against a prisoner for having
8 exercised those rights necessarily undermine those protections, such actions violate the
9 Constitution quite apart from any underlying misconduct they are designed to shield." *Rhodes*,
10 408 F.3d at 567 (citation omitted).

11 Plaintiff alleges in his Complaint that the search was in retaliation for Plaintiff filing
12 grievances, and that these events were close in temporal proximity. (Doc. # 4 at 5.) While this
13 alone may not be enough to surpass summary judgment, *see Nelson v. Pima Community*
14 *College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) (citation omitted), at this stage, the court must
15 take Plaintiff's allegations as true. *See Cahill,* 80 F.2d at 337-38. With this in mind, Defendants
16 have not established that Plaintiff's Complaint should be dismissed for failure to state a claim
17 upon which relief may be granted. Accordingly, Defendants' motion to dismiss Count II should
18 be denied.

19 **C. QUALIFIED IMMUNITY**

20 "[Q]ualified immunity protects government officials from liability for civil damages
21 insofar as their conduct does not violate clearly established statutory or constitutional rights
22 of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 129 S.
23 Ct. 808, 815 (2009) (citation and internal quotations omitted). Under certain circumstances,
24 state officials are entitled to qualified immunity when sued in their personal capacities. *Carey*
25 *v. Nev. Gaming Control Bd.*, 279 F.3d 873, 879 (9th Cir. 2002). When a state official
26 reasonably believes his or her acts were lawful in light of clearly established law and the
27 information they possessed, the official may claim qualified immunity. *Hunter v. Bryant*, 502
28

8

U.S. 224, 227 (1991) (per curiam); *Orin v. Barclay*, 272 F.3d 1207, 1214 (9th Cir. 2001). Where "the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Saucier v. Katz*, 533 U.S. 194, 202 (2001), *abrogated on other grounds in Pearson v. Callahan*, 555 U.S. 223 (2009) ("while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory").

In analyzing whether a defendant is entitled to qualified immunity, the court must consider two issues. The court must determine whether the plaintiff alleges a deprivation of a constitutional right, assuming the truth of his factual allegations, and whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1241 (2010) (citation and internal quotation marks omitted). "Whether a right is clearly established turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" *Id.* (citation and internal quotation marks omitted).

Defendants have presented the qualified immunity defense in the context of a motion to dismiss, where factual allegations are taken as true and are construed in the light most favorable to the nonmoving party. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001) (citation omitted). At this juncture, the court finds the qualified immunity defense is not viable. First, as the court found on screening, Plaintiff has asserted the violation of the constitutional rights in connection with his access to courts and retaliation claims. Second, the rights at issue were clearly established at the time of Defendants' alleged misconduct. A reasonable WCDF employee or official would know that the denial of access to legal materials so as to preclude Plaintiff from meaningfully preparing his case violates his First Amendment right to access the courts. *See Lewis*, 518 U.S. 343, 346. Likewise, a reasonable WCDF employee or official would know that the destruction of Plaintiff's legal paperwork because he filed grievances amounts to retaliation under the First Amendment, assuming, as Plaintiff alleges, that his First Amendment rights were actually chilled. *See Rhodes*, 408 F.3d at 567-68;

9

*Pratt*, 65 F.3d at 806. Therefore, Defendants' motion to dismiss on qualified immunity grounds should be denied.

### IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order **DENYING** Defendants' Motion to Dismiss (Doc. # 7).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the District Court's judgment.

DATED: January 9, 2012

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE