UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

MAX REED II,

   Plaintiff,

vs.

DEPUTY TRACY, et. al.

   Defendants.

3:11-cv-00066-HDM (WGC)

**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**

This Report and Recommendation is made to the Honorable Howard D. McKibben, Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.

Before the court is Defendants' Motion for Summary Judgment. (Doc. # 70.)[1] Plaintiff has opposed (Doc. # 74) and Defendants filed a reply (Doc. # 77).

After a thorough review, the court recommends that Defendants' motion be granted in part and denied in part.

**I. BACKGROUND**

Plaintiff Max Reed II, is an inmate in custody of the Nevada Department of Corrections (NDOC); however, the events giving rise to his complaint took place while he was a pretrial detainee at Washoe County Detention Facility (WCDF). (Pl.'s Compl. (Doc. # 4).) Plaintiff, a *pro se* litigant, brings this action pursuant to 42 U.S.C. § 1983. (*Id.* at 1.) Defendants are Washoe County Sheriff Michael Haley,

---

[1] Refers to the court's docket number.

and Deputies Tracy, Jenkins, and Hamilton[2]. (*Id*.)[3]

On screening, the court determined that Plaintiff states a colorable claim for violation of his right of access to courts against defendant Haley as well as a colorable retaliation claim against defendants Tracy, Jenkins and Hamilton. (Doc. # 3.)

In Count I, Plaintiff alleges that defendant Haley continuously thwarted Plaintiff's attempts to gain access to law books, procedural rules, and Nevada statutes. (Doc. # 4 at 4.) He claims that he received a grievance response that stated WCDF does not have to provide "law library access" to Plaintiff. (*Id*. at 3.) He alleges that he was trying to prepare his defense against criminal charges for robbery and murder. (*Id*. at 3-4.)[4]

In Count II, Plaintiff alleges that defendants Hamilton and Tracy retaliated against him for grieving his lack of access to legal materials by searching his cell. (Doc. # 4 at 5.) He alleges that he could hear defendant Tracy throwing his legal paperwork around. (*Id*.) He claims that during the search, defendant Tracy dumped out his legal paperwork, ripped up legal papers, and floated them in the toilet. (*Id*.) At the conclusion of the search, Plaintiff claims that defendant Tracy told him to get a lawyer because he had a "stupid amount of legal work." (*Id*.) He asserts that as a result of the search, defendant Jenkins found him guilty of having a weapon in his cell; Plaintiff asserts he had no weapon. (*Id*. at 5-6.)

Defendants previously moved to dismiss this action; however, the court denied the motion finding that the allegations of the complaint were sufficient to withstand a motion filed under Federal Rule of Civil Procedure 12(b)(6). (*See* Docs. # 34, # 35.)

Defendants now move for summary judgment, arguing: (1) there is no evidence that Sheriff Haley engaged in conduct directed towards Plaintiff, or that the Sheriff's Department had a policy or custom amounting to deliberate indifference to Plaintiff's constitutional rights that was the moving force behind the constitutional violation; (2) Sheriff Haley and the other WCDF defendants should be shielded

---

[2] Previously named as Doe Deputy # 1688. (*See* Doc. # 4.)

[3] Plaintiff sought leave to amend to add new claims and parties to this action. The court has concurrently issued a report and recommendation that his request for leave to amend be denied.

[4] While not specifically mentioned in his complaint, the parties both discuss Plaintiff's access to courts claim in connection with: (1) the defense of his criminal action; (2) this civil rights action; and (3) a petition for writ of habeas corpus.

2

from liability for Plaintiff's access to courts claims because they have quasi-judicial and/or absolute immunity; (3) Plaintiff cannot challenge the absence of a law library at WCDF to the extent he alleges he was denied access to courts in connection with a civil lawsuit, as this has already been adjudicated in *Baker v. Swinney*, CV-N-91-65-ECR; (4) Plaintiff cannot establish he suffered actual injury with respect to his section 1983 civil rights claim because he was provided with access to Washoe Legal Services, met with attorneys at Washoe Legal Services eighteen times during the time he was incarcerated at WCDF and was provided with a civil rights complaint form and in forma pauperis paperwork and instructions; (5) summary judgment is appropriate on Plaintiff's retaliation claim because Plaintiff was found guilty of the weapons charge in a jury trial and his conviction was affirmed by the Nevada Supreme Court and because Plaintiff's rights were not chilled as a result of the alleged retaliation; and (6) Plaintiff's claims are barred by *Heck v. Humphrey*.

Plaintiff opposes Defendants' motion. (Doc. # 74.) Preliminarily, he states that he agrees with the statement of the case put forward by Defendants. (*Id*. at 1.) He subsequently states, however, that he disputes that just because he was provided with standby counsel it means that he was provided with the required legal services. (*Id*.) He further disputes the claim that WCDF followed Judge Berry's orders and assisted Plaintiff in accessing legal materials in preparing his defense to his criminal prosecution. (*Id*. at 2.) He acknowledges he was afforded time to review discovery materials, but states it was restricted. (*Id*. at 2, 7.) He further states that WCDF failed its obligation to provide him with legal materials to defend himself in his criminal case after he declined the appointment of counsel and stated that he did not think standby counsel appointed by the court was doing an adequate job. (*Id*. at 6.) Finally, he disputes that Defendants are entitled to immunity on this claim. (*Id*. at 7.)

Next, insofar as his access to courts claim is predicated on his ability to litigate this civil rights action under section 1983, he concedes that Washoe Legal Services contracts with WCDF to provide legal services to WCDF inmates and that he in fact met with Washoe Legal Services, but they provided him with the wrong forms. (*Id*. at 3, 7.)

Plaintiff then addresses his access to courts claim as it relates to his petition for writ of habeas corpus. (*Id*. at 3, 7.) He acknowledges that the state court ruled on the petition despite it being submitted

3

on the wrong form, but asserts that this nevertheless demonstrates a pattern of denying access to the proper legal materials. (*Id.*) He also asserts that he does not seek to be relieved of his conviction, so his claim is not *Heck* barred. (*Id.* at 8.)

Plaintiff asserts that Sheriff Haley's liability is predicated on the fact that WCDF does not have a law library as well as the fact that they contract with inadequate legal advisors. (*Id.* at 5.)

Regarding his retaliation claim, Plaintiff first states that he agrees with the statement of facts presented by Defendants as well as the legal standard, but then goes on to state that factual issues preclude the entry of summary judgment. (*Id.* at 3, 8.) Plaintiff asserts that the disciplinary charge was alleged only as part of a larger pattern of retaliation and obstruction for utilizing the grievance process and filing court actions. (*Id.* at 8.)

## II.  LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). All reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.* (quoting Fed.R.Civ.P. 56(c)). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250.

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed.R.Civ.P. 56(c).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier

4

of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *See Anderson*, 477 U.S. at 248-250. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id*. at 248.

In determining summary judgment, a court applies a burden shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'[ ] In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 323-25. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)(quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Id*. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id*. at 249-50, 255 (citations omitted).

### III. DISCUSSION

**A. Access to Courts**

**1. Legal standard**

Convicted inmates and pretrial detainees have a constitutional right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 346 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977), *limited in part on other grounds by Lewis*, 518 U.S. at 354; *Ching v. Lewis*, 895 F.2d 608, 609 (9th Cir. 1990). This right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds*, 430 U.S. at 828; *see also Madrid v. Gomez*, 190 F.3d 990, 995 (9th Cir. 1999). The right, however, "guarantees no particular methodology but rather the conferral of a capability- the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts...[It is this capability] rather than the capability of turning pages in a law library, that is the touchstone" of the right of access to the courts. *Lewis*, 518 U.S. at 356-57. Prison officials may select the best method to ensure that prisoners will have the capability to file suit. *See id*. at 356. Prisons "might replace libraries with some minimal access to legal advice and a system of court-provided forms...that asked the inmates to provide only the facts and not to attempt any legal analysis." *Id*. at 352.

To establish a violation of the right of access to the courts, a prisoner must establish that he or she suffered an actual injury, a jurisdictional requirement that flows from the standing doctrine and may not be waived. *Lewis,* 518 U.S. at 348 (citation omitted); *see also Alvarez v. Hill*, 518 F.3d 1152, 1155 n. 1 (9th Cir. 2008) (citation omitted) (explaining, "[f]ailure to show that a 'non-frivolous legal claim ha[s] been frustrated' is fatal" to a claim of denial of access to the courts). "Actual injury" is defined as "actual prejudice with respect to contemplated or existing litigation, such as inability to meet a filing

6

deadline or present a claim." *Id*. at 348 (citation and internal quotations omitted). The right of access to the courts is limited to non-frivolous direct criminal appeals, habeas corpus proceedings, and civil rights actions under section 1983. *See Lewis*, 518 U.S. at 353 n. 3, 354-55; *Simmons v. Sacramento County Superior Court*, 318 F.3d 1156, 1159-60 (9th Cir. 2003) ("a prisoner has no constitutional right of access to the courts to litigate an unrelated civil claim"); *Madrid*, 190 F.3d at 995.[5]

**2. Analysis**

**I. Defense in criminal case, CR10-1575**

**a. Facts**

Plaintiff first claims that he was provided inadequate access to legal materials to prepare a defense for his criminal case where he was charged with murder.

It is undisputed that Plaintiff was charged with murder with a deadly weapon and robbery in the Second Judicial District Court of the State of Nevada in and for the County of Washoe, and counsel was appointed to represent Plaintiff in the criminal case. (Doc. # 70-2 at 2-**7** (Ex. 1 to Defs.' Mtn.); Doc. # 70-2 at 26 (Ex. 2 to Defs.' Mtn.); Doc. # 74 at 1.) Plaintiff then sought to represent himself and Judge Berry conducted a *Faretta* hearing. (Doc. # 70-3 at 8-25 (Ex. 2 to Defs.' Mtn.).) At the *Faretta* hearing, Plaintiff asked whether he would have access to a law library, and Plaintiff was informed that he would not. (*Id*. at 8, 20, 22.) Plaintiff was informed that although he would not have access to a law library, he would have discovery, and she would order the State to provide all discovery documents. (*Id*. at 20, 24.) An investigator was appointed to assist Plaintiff with his defense. (*Id*. at 16-17, 18, 23.) In addition, Judge Berry appointed standby counsel when Plaintiff opted to represent himself. (*Id*. at 18-19, 24.) Judge Berry further ordered that Plaintiff be allowed to review discovery at the WCDF, and that he be permitted to resume his legal tier time at the WCDF. (Doc. # 70-4 at 2-3 (Ex. 3 to Defs.' Mtn.).)

Plaintiff subsequently filed a motion requesting new standby counsel as well as a new investigator, and new standby counsel was appointed. (Doc. # 70-4 at 5-9 (Ex. 4 to Defs.' Mtn.), Doc. # 70-4 at 11 (Ex. 5 to Defs.' Mtn.).)

---

[5]While neither party addresses the issue, presumably the right of access to courts extends to a pretrial detainee's preparation of his defense in a criminal action since the right applies to a convicted inmate's attempt to directly or collaterally attack a sentence. *See Lewis*, 518 U.S. at 354-55.

7

In the course of pre-trial proceedings, Plaintiff submitted several requests to Judge Berry. First, Plaintiff requested approval of all of his evidence, which Judge Berry denied. (*See* Doc. # 70-5 at 2, 6-8 (Ex. 6 to Defs.' Mtn.).)

Next, he requested: (1) a copy of all of his court dates and court minutes to file paperwork, as well as his court file to begin his legal work; (2) a copy of all motions and orders from his case; (3) a new point of contact regarding the law and filing motions; (4) a copy of his incident report as well as certain Nevada Revised Statute provisions; (5) that various subpoenas be filed; (6) any interviews his appointed investigator had conducted; (7) his visiting records from lawyers and investigators. (Doc. # 70-5 at 9-17 (Ex. 6 to Defs.' Mtn.).)

Judge Berry responded to these requests as follows: (1) Counsel Edwards was directed to provide the media discovery to the WCDF; (2) Plaintiff requested and the court adopted four pre-trial motions previously filed by counsel Edwards, thus such request was granted; (3) the court denied the request; (4) the court directed Plaintiff to request this information through a subpoena; (5) the court granted the request to the extent the records relate to Plaintiff's Sonoma County incarceration and were available; (6) the court requested that investigator Savage obtain information related to this request; and (7) the court requested that investigator Savage obtain information related to this request. (Doc. # 70-5 at 2-3 (Ex. 6 to Defs.' Mtn.).)

He then sent another ten requests as follows: (1) an evidence hearing regarding judicial bias; (2) stand-by defense counsel's duties; (3) a form habeas corpus writ petition; (4) a new set of discovery because a correctional officer destroyed his legal paperwork; (5) assistance filing a motion to dismiss for lack of evidence and for withholding evidence indicating that he has no paper or access to cases to support such a motion; (6) cases regarding police and attorney misconduct; (7) cases regarding police leading witnesses, sharing information with other witnesses and withholding reports and evidence; (8) specific case authority and statutory provisions; (9) specific case authority; and (10) additional case authority. (Doc. # 70-5 at 18-29 (Ex. 6 to Defs.' Mtn.).)

The court responded to these requests as follows: (1) Plaintiff was directed to file the motion he deemed appropriate and forward it to the chief judge; (2) denied the request because Plaintiff was not

entitled to access to a law library; (3) directed Plaintiff to file the document or motion he deemed appropriate; (4) directed Plaintiff to file the motion he deemed appropriate related to the missing material; (5) directed Plaintiff to file the document he deemed appropriate; (6) directed Plaintiff to file the appropriate document; (7) denied the request because the court cannot serve as his attorney, and reminded Plaintiff he was entitled to court-appointed counsel; (8) denied the request because the court would not provide the authority requested; (9) denied the request in that the court would not provide the case authority or legal research; and (10) denied the request in that the court would not provided the case authority. (Doc. # 70-5 at 3-4 (Ex. 6 to Defs.' Mtn.).)

Plaintiff also requested an order that he be moved to an NDOC facility so that he could have access to legal materials in his cell as well as access to a law library. (Doc. # 70-5 at 30-34 (Ex. 7 to Defs.' Mtn.).)

Plaintiff was ultimately convicted on the murder charge following a jury trial. (Doc. # 70-6 at 2-3 (Ex. 9 to Defs.' Mtn.).)

**b. Factual issues exist regarding whether Plaintiff received adequate access to the courts in preparing his criminal defense at WCDF**

Defendant Haley argues Plaintiff cannot maintain his access to courts claim because during the time he was housed at WCDF he was assisted by standby counsel, the case was monitored by Judge Berry, WCDF staff followed court orders and assisted Plaintiff in his defense preparations while he was in custody because he was provided an hour daily in the multi-purpose room to review discovery and prepare his case, and forwarded his motions and inmate request forms to the court, which the court reviewed and provided a response. (Doc. # 70 at 11-12.)

Plaintiff, on the other hand, disputes the adequacy of the support provided by standby counsel, and claims that Judge Berry's rulings did not afford him sufficient access to the courts.

While it is true that Plaintiff was appointed counsel, he ultimately invoked his right to defend himself in the criminal action. Defendant Haley points to the fact that Plaintiff had standby counsel appointed to assist him; however, Plaintiff disputes that he was provided sufficient legal support by standby counsel, and defendant Haley acknowledges that Plaintiff did not have access to a law library

9

1  at WCDF. There is a consent decree concerning the provision of legal aid through Washoe Legal
2  Services, but the consent decree only applies to civil actions. (*See* Exhibit 10 to Defs.' Mtn., *Baker v.*
3  *Swinney*, CV-N-91-65-ECR.) While Plaintiff was admittedly able to send many requests to Judge Berry,
4  some of his requests for access to legal research materials were denied, and Plaintiff claims he was
5  unable to procure these materials through WCDF. *Bounds v. Smith* held that "prison authorities [must]
6  assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with
7  *adequate* law libraries or *adequate* assistance from persons trained in the law." *Bounds v.* Smith, 430
8  U.S. 817, 828 (1977) (emphasis added). Thus, the court finds that material factual issues exist as to
9  whether Plaintiff was denied *adequate* access to courts at WCDF with respect to his criminal defense.

### c. Defendant Haley is not entitled to quasi-judicial immunity

11  Defendant Haley also argues that he is entitled to immunity from suit because persons who
12  faithfully execute valid court orders are immune from liability for damages in civil rights actions
13  challenging conduct authorized by the court order and here the case was managed by the trial court.
14  (Doc. # 70 at 12-13.)

15  Defendant Haley's immunity argument is unavailing. First, defendant Haley relies on the Ninth
16  Circuit's opinion in *Fayle v. Stapley*, 607 F.2d 858, 862, n.4 (9th Cir. 1979). In that case the plaintiff was
17  charged with assault with intent to murder but the charges were dismissed because Plaintiff was
18  determined to be incompetent to stand trial, but he was civilly committed to treat his mental health
19  issues. *Id*. at 860. The county attorney requested a court order that he be required to pay for his civil
20  commitment pursuant to an Arizona statute. *Id*. The court ordered reimbursement of the county treasurer
21  based on a percentage of the plaintiff's income, and the plaintiff sued for a violation of his civil rights.
22  *Id*. The defendants argued that they were merely complying with the court's order. *Id*. at 861-62. The
23  Ninth Circuit acknowledged that immunity existed insofar as certain of the defendants were acting
24  pursuant to a court order, but stated that immunity did not apply for action taken after the court issued
25  its order. *Id*. at 862, n. 4 (citing *Lockheart v. Hoenstine*, 411 F.2d 455, 460 (3d Cir. 1969); *Int'l Molders*
26  *& Allied Workers v. Buchanan Lbr. Birmingham*, 459 F.Supp. 950, 952 (N.D. Ala 1978).

27  In that case, there was a clear court order requiring the reimbursement of funds on which the

28

10

defendants predicated their action. Here, defendant Haley does not point to any particular court order which required him to limit Plaintiff's access to legal research materials. Presumably, he is relying on Judge Berry's orders denying Plaintiff's requests for legal research materials, but Judge Berry said that *the court* could not provide these materials to Plaintiff. She did not *order* that WCDF was precluded from providing the research materials.

Next, defendant Haley supports his argument by relying on dicta in *Gregory v. Thompson*, 500 F.2d 59, 64 n. 6 (9th Cir. 1974), *Gillibeau v. City of Richmond*, 417 F.2d 426, 429 (9th Cir. 1969), and *Haldane v. Chagnon*, 345 F.2d 601, 604 (9th Cir. 1965).

*Gregory* involved the physical ejection of a person from a courtroom, and the court stated in a footnote that "those acting 'at the direction of a judge...to whom they were immediately and directly responsible' would enjoy quasi-judicial immunity...that immunity attaches only insofar as the authorization to act extends." *Gregory*, 500 F.2d at n. 6 (internal citation omitted). The court was commenting on the theoretical argument for immunity asserted by a sheriff who had physically removed someone from a courtroom in which he worked. Here, defendant Haley cannot contend in denying Plaintiff access to a law library he was acting pursuant to direction of a judge to whom he was directly responsible.

In *Gillibeau*, the court stated that persons who were directly responsible to a judge and were acting in the scope of their agency would have quasi-judicial immunity for carrying out an order of the judge. *Gillibeau*, 417 F.2d at 429. In *Haldane,* the court similarly stated that a bailiff was entitled to immunity for conduct done at the court's direction. *Haldane*, 345 F.2d at 604. These cases are not factually analogous to the circumstances presented here.

The court is not presented with facts where defendant Haley was acting pursuant to a court order in preventing Plaintiff from accessing a law library. As such, the court cannot conclude defendant Haley is entitled to immunity on these grounds.

///

///

///

11

**d. Defendant Haley acknowledges Plaintiff was denied access to a law library**

Finally, defendant Haley argues that there is no evidence that he engaged in conduct specifically directed towards Reed. (Doc. # 70 at 8-9.)

Plaintiff has asserted that he was denied access to legal research materials at WCDF. Defendant Haley acknowledges that WCDF does not have a law library, but argues that Plaintiff was otherwise granted adequate access to legal research materials through his access to the trial court and standby counsel.

Plaintiff asserts, and defendant Haley acknowledges that he does not have access to a law library at WCDF. Plaintiff also disputes that the trial court or standby counsel provided him with adequate access to the courts. The court finds that a reasonable fact finder could conclude there are sufficient factual issues to present to a jury regarding defendant Haley's liability. Regarding a claim against defendant Haley in his official capacity, the court finds that drawing all inferences in Plaintiff's favor, Plaintiff has adequately asserted that the denial of his access to the courts was a result of a policy of precluding access to a law library at WCDF. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

**e. Defendant Haley does not raise the actual injury argument or qualified immunity defense with respect to this portion of Plaintiff's claim**

Defendant Haley does not raise, and therefore the court will not address, an argument that Plaintiff has not established actual injury with respect to his criminal action. Nor does defendant Haley raise the defense of qualified immunity. While defendant Haley may ultimately be entitled to qualified immunity based on the circumstances of this case (i.e., WCDF has no law library; WCDF has entered into a consent decree where legal services are provided to its inmates in civil cases; Plaintiff was appointed counsel in his criminal case but opted to represent himself; Plaintiff was appointed standby counsel in his criminal case, but he claims standby counsel was inadequate); however, because he has not met his burden of raising this argument, the court will not consider the defense at this juncture.

In sum, the court recommends that summary judgment be denied as to Plaintiff's First Amendment access to courts claim because of the existence of material factual issues concerning the defense of his criminal case.

12

### ii. Civil rights case, 3:11-cv-00066-HDM-WGC

Next, the court will address Plaintiff's access to courts claim to the extent he asserts that he was denied his rights in connection with the instant civil rights case brought pursuant to section 1983.

Plaintiff concedes that WCDF contracts with Washoe Legal Services to provide legal assistance in civil cases and certain federal writs for inmates at WCDF. (Doc. # 74 at 3.) Moreover, Plaintiff cannot establish that he suffered actual injury with respect to his civil rights action. He was unquestionably able to file the action, and there is no evidence before the court indicating that he was unable to make any other filings in this case. Accordingly, the court recommends that summary judgment be granted in Defendants' favor to the extent his access to courts claim is predicated on inadequate access to legal materials in connection with his civil rights case.

### iii. Habeas petition

Finally, the court will address Plaintiff's claim to the extent he asserts that he was denied his right of access to the courts in connection with the filing of a petition for writ of habeas corpus related to his underlying criminal matter.

Plaintiff filed a petition for writ of habeas corpus on January 25, 2011. (Doc. # 70-6 at 15-23 (Ex. 11 to Defs.' Mtn.).) He filed a second petition for writ of habeas corpus on February 15, 2011. (Doc. # 70-7 at 2- 10 (Ex. 12 to Defs.' Mtn.).)

The Second Judicial District Court of the State of Nevada in and for the County of Washoe issued an order on June 15, 2011, noting that it considered the merits of the petitions even though they were untimely, and apparently even though one was filed on the federal habeas petition form. (Doc. # 70-7 at 12-33 (Ex. 13 to Defs.' Mtn.).) Plaintiff concedes this fact. (Doc. # 74 at 3.) Accordingly, Plaintiff cannot establish he suffered actual injury as a result of the alleged inadequacy of access to legal materials in preparing his petition for writ of habeas corpus. As a result, summary judgment should be entered in Defendants' favor on Plaintiff's access to courts claim to the extent it is predicated on a lack of access to adequate legal materials in filing a petition for writ of habeas corpus.

///

**B. Retaliation**

    **1. Legal standard**

A retaliation claim requires: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (citations omitted); *see also Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009) (quoting *Rhodes*, 408 F.3d at 567-68). Retaliation claims must be evaluated in light of the deference that must be accorded to prison officials. *See Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995).

An inmate must submit evidence, either direct or circumstantial, to establish a link between the exercise of constitutional rights and the allegedly retaliatory action. *Pratt*, 65 F.3d at 806-07. "[A] plaintiff must show that his protected conduct was the 'substantial' or 'motivating' factor behind the defendant's conduct." *Brodheim*, 584 F.3d at 1271 (internal quotation marks omitted, quoting *Sorrano's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989)). The plaintiff "need only 'put forth evidence of retaliatory motive, that, taken in the light most favorable to him, presents a genuine issue of material fact as to [the defendant's] intent[.]'" *Id.* (quoting *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003)). Timing of the events surrounding the alleged retaliatory action may constitute circumstantial evidence of retaliatory intent. *See Sorrano's Gasco*, 874 F.2d at 1316.

A plaintiff's mere speculation that there is a causal connection is not enough to raise a genuine issue of material fact. *See Nelson v. Pima Community College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("mere allegation and speculation do not create a factual dispute for purposes of summary judgment") (citation omitted).

The Ninth Circuit has recognized that prisoners have a fundamental First Amendment right to file prison grievances and pursue civil rights litigation, and "because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield." *Rhodes*, 408 F.3d at 567 (citation omitted).

"[A]n objective standard governs the chilling inquiry; a plaintiff does not have to show that 'his speech was actually inhibited or suppressed,' but rather that the adverse action at issue 'would chill or silence a person of ordinary firmness from future First Amendment activities.'" *Brodheim*, 584 F.3d at 1271 (quoting *Rhodes*, 408 F.3d at 568-69).

"[A] prisoner must show that the challenged action 'did not reasonably advance a legitimate correctional goal.'" *Brodheim*, 584 F.3d at 1271 (quoting *Rhodes*, 408 F.3d at 568).

"[I]n determining whether a proffered legitimate penological interest is reasonably related to a regulation which infringes on a prisoner's constitutional right" the court must consider the "four factors set forth in *Turner v. Safley*, 482 U.S. 78," which are:

> a 'valid rational connection' between the prison regulation and the legitimate [and neutral] governmental interest put forward to justify it.' If the connection between the regulation and the asserted goal is 'arbitrary and irrational,' then the regulation fails, irrespective of whether the other factors tilt in its favor. In addition, courts should consider three other factors: the existence of 'alternative means of exercising the right' available to inmates; 'the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally'; and 'the absence of ready alternatives' available to the prison for achieving the governmental objectives.

*Brodheim*, 584 F.3d at 1272 (quoting *Shaw v. Murphy*, 532 U.S. 223 (2001), quoting *Turner*).

### 2. Analysis

Plaintiff alleges that the search of his cell which resulted in a charge that he was in possession of a weapon was in retaliation for his filing grievances about the inadequacy of the legal materials at WCDF, and that these events were close in temporal proximity. (Doc. # 4 at 5.)

Defendants counter that as a result of the search: Plaintiff was charged with the crime of possession of a dangerous weapon by a prisoner, a felony; faced a jury trial; was convicted; and his conviction was affirmed by the Supreme Court. (Doc. # 70 at 6; Doc. # 70-8 at 1-4, Criminal Information filed against Plaintiff for the weapons charge (Ex. 14 to Defs.' Mtn.); Doc. # 70-5 at 36-37 (Ex. 8 to Defs.' Mtn.); Doc. # 70-8 at 6-7, Order of Affirmance of conviction (Ex. 15 to Defs.' Mtn.).) Therefore, they maintain that he cannot pursue a retaliation claim based on the search or weapons charge. (Doc. # 70 at 15-16.) In addition, they argue that Plaintiff's exercise of his First Amendment rights was not chilled because he continued to file papers in court following this incident. (Doc. # 70 at 16.)

1    First, Defendants' argument that Plaintiff cannot maintain a retaliation claim because he was ultimately convicted of being in possession of a weapon (*see* Doc. # 70 at 15) does not address the gravamen of Plaintiff's claim- that his cell was subjected to a *search* because of his grievance filings. (*See* Doc. # 4 at 5.) It only focuses on the disciplinary action that took place after the search turned up a weapon. Defendants provide no insight as to the reason the search was conducted in the first place in order to negate the causation element of Plaintiff's retaliation claim. Nor do they even assert the argument that the search advanced a legitimate correctional goal.

Second, with respect to the argument that Plaintiff's rights were not chilled, the test is not whether Plaintiff's speech was *actually* suppressed, but whether conducting a search and then disciplinary action in response to an inmate filing grievances regarding a lack of access to legal materials "would chill or silence a person of ordinary firmness from future First Amendment activities." *See Brodheim*, 584 F.3d at 1271 (citation and internal quotation marks omitted). Defendants failed to address the chilling element of Plaintiff's claim using the correct standard, and the court cannot say, as a matter of law, that a reasonable person's First Amendment activities would not be chilled if their cell was subject to search for filing grievances or if they were subject to disciplinary action for filing grievances.

In sum, the court finds that Defendants have not met their burden in moving for summary judgment on Plaintiff's retaliation claim.

**C. *Heck v. Humphrey***

Defendants argue Plaintiffs claims are barred by *Heck v. Humphrey*. (Doc. # 70 at 16-18.) In *Heck*, the Supreme Court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

*Id*. at 487.

The court "must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed[.]" *Id*. If,

16

however, "the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." *Id*. "*Heck*, in other words, says that if a criminal conviction arising out of the same facts stands and is fundamentally inconsistent with the unlawful behavior for which section 1983 damages are sought, the 1983 action must be dismissed." *Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996).

Here, Plaintiff represents that he does not seek to render a conviction or sentence invalid. (Doc. # 74 at 8.) In addition, the court cannot conclude that judgment in favor of Plaintiff would *necessarily* imply the invalidity of his conviction or sentence. If Plaintiff succeeds on his access to court's claim, it does not necessarily mean that his criminal conviction would be overturned. Likewise, a successful retaliation claim would presumably have no effect on his criminal conviction. Therefore, the court finds Plaintiff's claims are not barred by *Heck v. Humphrey*.

### IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order **GRANTING IN PART AND DENYING IN PART** Defendants' motion for summary judgment (Doc. # 70) as follows:

(1) summary judgment should be **GRANTED** to defendant Haley on the access to courts claim in Count I insofar as it is predicated on Plaintiff suffering actual injury in connection with his section 1983 civil rights action or petition for writ of habeas corpus;

(2) summary judgment should be **DENIED** to defendant Haley on the access to courts claim in Count I insofar as it is predicated on Plaintiff suffering actual injury in connection with the defense of his criminal action; and

(3) summary judgment should be denied to defendants Tracy, Jenkins and Hamilton on the retaliation claim in Count II.

///
///
///
///

17

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the District Court's judgment.

DATED: July 9, 2013.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE