UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| MAX REED, II, | ) | 3:11-cv-00066-HDM-WGC |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER |
| vs. | ) | |
| | ) | |
| DEPUTY TRACY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff Max Reed II, a *pro se* litigant, is an inmate in the custody of the Nevada Department of Corrections (NDOC). The events giving rise to his § 1983 complaint (#4), however, took place while he was a pretrial detainee at Washoe County Detention Facility (WCDF). Pl. Compl. 3. In his complaint, plaintiff Reed alleged multiple access to courts claims in Count I, and multiple First Amendment retaliation claims in Count II. *Id.* at 4-6.

On September 13, 2013, this court issued an order (#90) granting in part and denying in part the defendants' motion for summary judgment (#70). Following this order (#90), the plaintiff's only remaining claim was a First Amendment retaliation claim against defendants Hamilton and Tracy. This claim was

1

limited to whether a search of the plaintiff's cell was conducted in retaliation for the plaintiff's prison grievances regarding his alleged denial of access to courts.

Following the granting in part and denying in part of their motion for summary judgment, the defendants filed a motion for leave to file a successive motion for summary judgment (#93), which was granted (#96) by the United States Magistrate Judge.

Presently before the court is the defendants' successive motion for summary judgment (#94), filed on September 27, 2013. The plaintiff filed an objection (#101) on October 18, 2013, and the defendants replied (#104) on October 29, 2013.

**Standard**

Summary judgment shall be granted "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). The burden of demonstrating the absence of a genuine issue of material fact lies with the moving party, and for this purpose, the material lodged by the moving party must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Martinez v. City of Los Angeles*, 141 F.3d 1373, 1378 (9th Cir. 1998).  A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. *Lynn v. Sheet Metal Workers Int'l Ass'n,* 804 F.2d 1472, 1483 (9th Cir. 1986); *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

Once the moving party presents evidence that would call for judgment as a matter of law at trial if left uncontroverted, the respondent must show by specific facts the existence of a genuine

issue for trial. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249-50 (citations omitted). "A mere scintilla of evidence will not do, for a jury is permitted to draw only those inferences of which the evidence is reasonably susceptible; it may not resort to speculation." *British Airways Board v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir. 1978); *see also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 596 (1993) ("[I]n the event the trial court concludes that the scintilla of evidence presented supporting a position is insufficient to allow a reasonable juror to conclude that the position more likely than not is true, the court remains free . . . to grant summary judgment.").

Moreover, "[i]f the factual context makes the non-moving party's claim of a disputed fact implausible, then that party must come forward with more persuasive evidence than otherwise would be necessary to show there is a genuine issue for trial." *Blue Ridge Insurance Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998) (citing *Cal. Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987)). Conclusory allegations that are unsupported by factual data cannot defeat a motion for summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

**Analysis**

To succeed in an action under 42 U.S.C. § 1983, plaintiffs must show that "(1) defendants acting under color of state law (2)

3

deprived plaintiffs of rights secured by the Constitution or federal statutes." *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986) (citations omitted). Retaliation claims are appropriate under § 1983 and require "[a] prisoner suing prison officials . . . to show that he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penlogical goals, such as preserving institutional order and discipline." *Barnett v. Centoni*, 31 F.3d 813, 815-816 (9th Cir. 1994) (citations omitted).

Specifically, a viable First Amendment retaliation claim in the Ninth Circuit must include "five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (citations omitted).

There is no dispute between the parties that the search did occur, so the first element of plaintiff Reed's retaliation claim, that "a state actor took some adverse action against an inmate," has been met. (*Id.* at 567; *see also, e.g.*, Def. Mot. Succ. Summ. J. 4; Compl. 5.) It is also "well established [in the Ninth Circuit] that among the rights they retain, prisoners have a First Amendment right to file prison grievances," and that "[r]etaliation against prisoners for their exercise of this right is itself a constitutional violation, and prohibited as a matter of 'clearly established law.'" *Brodhiem v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009) (citations omitted); *see also Bruce v. Ylst*, 351 F.3d 1283,

4

1288 (9th Cir. 2003); *Rhodes*, 408 F.3d at 567. The third element of plaintiff Reed's retaliation claim, that the prisoner's conduct allegedly inciting the retaliation claim was "protected," has therefore also been indisputably met. *Rhodes*, 408 F.3d at 567.

The outstanding elements are then the second element, which involves whether the defendants conducted the search *because* of plaintiff Reed's grievance filings, the fourth element, which involves whether the defendants' actions chilled plaintiff Reed's exercise of his First Amendment rights, and the fifth element, which involves whether the defendants' actions in searching plaintiff Reed's cell reasonably advanced a legitimate correctional goal. *See Rhodes*, 408 F.3d at 567-68.

With regard to the second element, in sharp contrast to the arguments made in their first motion for summary judgment (Def. Mot. Summ. J. 15-16), defendants have in their successive motion for summary judgment provided non-retaliatory reasons for why the search was conducted. Defendants have explained prison procedures regarding cell searches and have attached portions of the Washoe County Sheriff's Office Standard Operating Procedures governing facility searches (Def. Mot. Succ. Summ. J. Ex. 3) and detention safety inspections (*id.* at Ex. 4). Defendants allege that the search was conducted in compliance with typical procedure regarding searches. *Id.* at J. 7-8. Defendants state that random cell searches are generally more effective than planned ones, and that Defendants Hamilton and Tracy merely took advantage of an opportune moment to search the plaintiff's cell when he was not in it. *Id.* Defendants purport that neither defendant Hamilton nor Defendant Tracy knew of or had met the plaintiff prior to the day he filed

5

his grievance and his cell was searched, and therefore had no motivation to retaliate against him. *Id.* at 8. Defendants support their claims by attaching affidavits from defendant Tracy (*id.* at Ex. 1) and defendant Hamilton (*id.* at Ex. 2), as well as excerpts from the sworn testimony of defendants Tracy and Hamilton (*id.* at Ex. 5) at the Second Judicial District Court trial of CR 11-0026, the case in which plaintiff Reed was eventually convicted by a jury of weapon possession.

However, plaintiff Reed has also provided circumstantial evidence in support of his claim that the search was conducted as retaliation for his prison grievances. The Plaintiff alleges that after his cell was searched, Deputy Tracy "told [him] to get a lawyer, because [he had] a stupid amount of legal work." (Compl. 5). Plaintiff Reed also claims that when he returned to his cell after the search, his "legal work [was] dumped on the bed mixed up and envelopes ripped apart" and that there was "paper floating in the toilet and pieces ripped up on the bed and the floor." *Id.* He further states that he asked if he could photograph the damage, but his request was denied. *Id.* These allegations arguably suggest a link between the search and plaintiff Reed's grievances regarding his alleged access to courts. Additionally, defendants, while making note of these allegations in their motion, have not disputed or denied them in any way. (Def. Mot. Succ. Summ. J. 3-5).

Furthermore, the defendants concede that the cell search occurred while the plaintiff was discussing his grievance with defendant Hamilton. *Id.* at 7-8. The defendants explain that defendant Hamilton found the plaintiff's grievance request in his mail box, whereupon he asked that plaintiff Reed be escorted

6

downstairs to discuss the grievance with him, and also ordered that his cell be contemporaneously searched. *Id.* While defendants do provide an alternative reason for the search, stating that it was conducted at that time "simply because it was an opportune moment to search [plaintiff Reed's] cell" (*id*. at 8), "timing can properly be considered as circumstantial evidence of retaliatory intent." *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995) (citations omitted).

The role of the court when deciding a motion for summary judgment is not to "weigh the evidence or determine the truth of the matters asserted" but only to "determine whether there is a genuine issue for trial." *Summers v. A. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 2000). In the case at hand, the parties have supplied conflicting evidence about the motivation behind the search. "[V]iew[ing] the evidence in the light most favorable to the nonmoving party," as this court is required to do in reviewing motions for summary judgment, the court finds that whether or not the defendants searched plaintiff Reed's cell in retaliation for his grievance filings is a question that must ultimately be resolved by the trier of fact. *Matsushita Elec. Indus. Co. V. Zenith Radio Corp.*, 475 U.S. 574, 574 (quoting *United States v. Diebold*, 369 U.S. 654, 655 (1962)).

With regard to the fourth element, defendants allege that "the record does not indicate that the search chilled plaintiff's First Amendment activity," and go on to cite the multiple grievances filed by the plaintiff as well as the case at hand as evidence that the plaintiff's First Amendment exercise was not in fact chilled.

7

(Defs. Mot. Succ. Summ. J. 8).  However, as the Ninth Circuit has made clear, the "the proper First Amendment inquiry asks" not whether an individual plaintiff was actually silenced or chilled in his exercise of his rights, but "'whether an official's acts would chill *or* silence a person of ordinary firmness from future First Amendment activities.'"  *Rhodes*, 408 F.3d at 568 (9th Cir. 2005) (citations omitted).  To hold otherwise would create a "vicious Catch-22" in which the only way for an inmate to obtain relief from retaliatory conduct would be to engage in behavior which itself would bar him from ever obtaining relief.  *Id.* at 569.  Thus, plaintiff Reed's grievances and actions in pursuing the case at hand are not evidence that his First Amendment rights have not been chilled.  The question of whether the defendants' actions "would chill or silence a person of ordinary firmness" is an issue of material fact for trial.  *Id.* at 568.

Finally, with regard to the fifth element, the defendants claim that "the search of plaintiff's cell reasonably advanced WCDF's legitimate correctional goal of protecting the institution's safety and security." Def. Mot. Succ. Summ. J. 8.  The defendants have supplied information about the penological importance and value of inmate cell searches, particularly random searches, and have argued that the search was in compliance with regular operating procedures designed to ensure the safety and security of prison institutions.  (*See id.* at 7-8, Ex. 1-4).  However, "prison officials may not defeat a retaliation claim on summary judgment simply by articulating a general justification for a neutral process, when there is a genuine issue of material fact as to

8

whether the action was taken in retaliation for the exercise of a constitutional right." *Bruce*, 351 F.3d at 1289 (citations omitted). While appropriately performed inmate cell searches undeniably serve a legitimate correctional goal, searches performed as a retaliatory response to an inmate's exercise of his fundamental constitutional rights do not. Thus, given that there is a genuine issue of material fact as to whether the search was conducted in retaliation, there is also a genuine issue of material fact as to whether the search "reasonably advance[d] a legitimate correctional goal." *Rhodes*, 408 F.3d at 568.

**Conclusion**

In accordance with the foregoing, the defendants successive motion for summary judgment is **DENIED**.

**IT IS SO ORDERED.**

DATED: This 18th day of November, 2013.

_____
UNITED STATES DISTRICT JUDGE

9